# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 10 C 07663 ) |
| MICHAEL ORTEGA, indv. and d/b/a MIKE'S PLACE d/b/a/ RIO BRAVO LOUNGE, and MIKE'S PLACE d/b/a RIO BRAVO LOUNGE, | ) Judge John J. Tharp, Jr. ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the plaintiff's motion for prove-up. For the reasons explained below, the Court awards the sum of $18,000 in statutory liquidated damages, enhanced damages, and attorneys' fees and costs, and enters a final default judgment against the defendants in that amount.

**I.  Background**

Plaintiff J&J Sports Productions, Inc. ("J&J Sports") filed this action alleging that Defendants Michael Ortega, individually and d/b/a Mike's Place d/b/a Rio Bravo Lounge, and Mike's Place d/b/a Rio Bravo Lounge knowingly and willfully violated certain provisions of the Communications Act of 1934, 47 U.S.C. § 605 ("Act"), and the Cable Communications Policy Act of 1984, 47 U.S.C. § 553, by unlawfully intercepting and exhibiting the "Oscar De La Hoya v. Manny Pacquiao Welterweight Championship Fight Program" ("Program") on December 6, 2008. On April 25, 2012, this Court entered a default judgment against the defendants and set the matter for prove-up. J&J Sports has filed a memorandum of law, an affidavit, and other

documents in support of its request for statutory and enhanced damages, attorneys' fees and costs, and the entry of an award against the defendants.[1]

The background facts of this case, except those relating to damages, are taken from the allegations in the plaintiff's complaint and are deemed admitted as a consequence of the defendants' default. *See, e.g., Black v. Lane,* 22 F.3d 1395, 1397 n. 4 (7th Cir. 1994). J&J Sports has established that it paid for and was thereafter granted the exclusive nationwide television distribution rights to the Program. Various commercial establishments (*i.e.,* hotels, bars, restaurants, etc.) could, for a fee, obtain limited sublicensing rights from J&J Sports to exhibit the Program to patrons within their respective establishments. J&J Sports states that it expended substantial sums marketing, advertising, promoting, administering, and transmitting the Program to its paying customers, the aforementioned commercial establishments. Understandably, J&J Sports wishes to enforce its distribution rights and ensure that only those who have paid the appropriate fee, pursuant to a contract, gain access to the Program.

To ensure that only legitimate sub-licensees receive the Program, the plaintiff retains investigators that visit commercial establishments to determine whether the Program is being exhibited without proper authorization. J&J Sports has submitted the affidavit of one such investigator, who avers that he entered Rio Bravo Lounge at 10:00 p.m. on December 6, 2008, the night of the Program, paid a $10 cover charge, and observed three televisions displaying the

---

[1] The imposition of liability is proper against both the business entity, Mike's Place, and the individual defendant, Michael Ortega, because a principle or officer of the business entity, as someone "'who has the right and ability to supervise [the intercepting] activity and has a financial interest in that activity, or who personally participated in that activity, is personally liable for the [interception].'" *Hard Rock Café Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143, 1150 (7th Cir. 1992) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971)).

Program. The investigator counted 50 patrons in the defendants' establishment on three separate headcounts.

As a result of the defendants' default, they are deemed to have unlawfully intercepted the match and shown it to their patrons and to have done so willfully and for the purposes of direct and indirect commercial advantage or private financial gain.[2] *See Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.,* 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").

## II. Analysis

J&J Sports alleges that the defendants violated both 47 U.S.C. §§ 605 and 553. The plaintiff's complaint, brief, and affidavit support a conclusion that the defendants intercepted, without authorization, a transmission of the Program and broadcast it to its patrons. Whether § 605 or § 553 applies to those facts depends on the point at which the alleged interception occurred. However, the record contains no allegations or evidence substantiating the nature of the transmission (*i.e.,* transmission over a cable system or satellite broadcast) that was intercepted by the defendants. That said, the Court concludes that although the precise means of transmission has not been determined, under the circumstances of this case, where the plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of the defendants' failure to appear or defend in this adjudication, J&J Sports should not suffer the resulting prejudice. In any event, J&J Sports is seeking a judgment and damages pursuant to

---

[2] While it is impossible without discovery or an admission from the defendants to determine what method the defendants used to access the cable signal, it is logical to conclude that they must have used an illegal receiver, misrepresented their business establishment as a residence, or engaged in "mirroring" by taking a legitimate receiver from a home to the business establishment in order to intercept the plaintiff's Program.

§ 605 only, and the practical impact of which statute applies is nil; the Court's calculation of damages fits within either statutory scheme. Thus, the Court concludes that the plaintiff has established a violation of § 605.

Under §605(a), a claimant may elect actual or statutory damages pursuant to § 605(e)(3)(C)(i). The plaintiff has elected statutory liquidated damages, which range from a minimum of $1,000 to a maximum of $10,000, within the Court's discretion.[3] The plaintiff also seeks enhanced damages for willful violations under § 605(e)(3)(C)(ii).[4] That section permits enhanced damages of up to $100,000, in the discretion of the Court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.,* 146 F. Supp. 2d 955, 959-61 (E.D. Wis. 2001). The plaintiff has also requested an award of attorneys' fees and costs in the amount of $2,694 pursuant to § 605(e)(3)(B)(iii).[5]

The Court first turns to the plaintiff's request for statutory damages. As this district has previously noted, "[w]hen the number of patrons at defendant's establishment is known, most courts award damages under § 605 based on the number of patrons." *J&J Sports Production, Inc.*

---

[3] Under § 605(e)(3)(C)(i)(II), an aggrieved party "may recover an award of statutory damages for each violation of subsection (a)…in a sum not less than $1,000 or more than $10,000 as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

[4] Section 605(e)(3)(C)(ii) provides that:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages…by an amount of not more than $100,000 for each violation on subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii).

[5] Section 605(e)(3)(B)(iii) states that the Court "shall direct the recovery of full costs, including awarding attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

*v. Ramirez,* No. 08 C 03354, Minute Order, at 1-2 (N.D. Ill. Sept. 18, 2008), ECF No. 20 (basing award on $55 per patron, citing *That's Entertainment, Inc. v. Old Bridge Tavern,* No. 94 C 02612, 1996 WL 148045 (N.D. Ill. Mar. 28, 1996) (awarding $55 per patron to "sufficiently compensate[] plaintiff while…also deter[ing] defendant from future violations"); *J&J Sports Production, Inc. v. Schrader Rest. Corp.,* 485 F. Supp. 2d 422, 423 (S.D.N.Y. 2007) (awarding damages based on Judge Baer's formula of $50 per patron, plus $1,000 for each willful violation, plus attorneys' fees and costs); *see also Googies Luncheonette,* 77 F. Supp. 2d at 490 (adopting a method of awarding a set sum to be multiplied by the number of patrons, plus any cover charge or other profit that can be attributed to the unauthorized showing, in order to fully compensate the plaintiff and fully divest the defendant of any profits). On the date in question, the investigator observed, on three separate headcounts, a maximum of 50 patrons.[6]

While other courts have determined a set sum per patron (*i.e.,* $55 per patron), the plaintiff here has submitted a rate card setting the fees that commercial establishments would have had to pay to obtain sublicensing rights. Based on a maximum of 50 patrons, the defendants would have had to pay $2,200 to order the Program. *See* Dkt. 19, Ex. B (minimum seating of 0 to 100 subject to a rate of $2,200). This base amount, however, would only compensate the plaintiff for its loss, and not fully divest the defendants of any profits derived from unlawfully exhibiting the program, such as the $10 cover charge and sale of drinks. But as noted above, Plaintiff has alleged and, in the absence of any response by defendants, the Court has found that the

---

[6] The Court uses the maximum patrons counted by the investigator (which was the same for each of the three counts), but notes that both the total and maximum number of patrons may have been higher, depending on the rate of turnover of customers. However, the materials submitted by the plaintiff do not provide a way for the Court to determine the actual number of customers that viewed the Program.

defendants' violation was willful within the meaning of the Act, and therefore subject to enhanced damages.

In regard to enhanced damages, the Act simply sets forth a maximum recovery and otherwise leaves the matter to the discretion of the Court. In considering how much to award in enhanced damages, courts have considered a number of factors, including: (1) the number of violations; (2) defendants' unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendants advertised for the event; and (5) whether the defendant collected a cover charge on the night of the event. *See Ramirez,* No 08 C 03354, at 2 (citing *Kingvision Pay-Per-View, Ltd. v. Rodriquez,* No. 02 Civ. 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003)). In addition to those factors, courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct. *See, e.g., Garden City Boxing Club, Inc. v. Luis Polanco & Luischia Restaurant Corp.,* No. 05 Civ. 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006); *Rodriguez,* 2003 WL 548891, at *2. "An additional award for willfulness will put violators 'on notice that it costs less to obey the…laws than to violate them.'" *Googies Luncheonette,* 77 F. Supp. 2d at 491 (citing *Rodgers v. Eighty Four Lumber Co.,* 623 F. Supp. 889, 892 (W.D. Pa. 1985)).

The record before the Court does not establish that the defendants advertised the Program. However, the investigator's affidavit does establish that the defendants charged a $10 cover charge on the night in question and that the Program was being displayed on all three of the defendants' televisions, making the plaintiff's Program the sole entertainment exhibited on the night in question. Further, the record establishes that the defendants are repeat offenders. *See J&J Sports Production, Inc. v. Ortega,* No. 10 C 04579, Minute Order (N.D. Ill. Oct. 21, 2010), ECF No. 12 (dismissed pursuant to stipulation and settlement agreement); *J&J Sports*

*Production, Inc. v. Ortega,* No. 10 C 02048, Minute Order (N.D. Ill. Feb. 23, 2012) (default judgment against defendants in the sum of $17,018.75). With *Googies Luncheonette* as a guide, the Court awards the plaintiff an additional $13,200 in enhanced damages—a factor of six times the base award derived from the defendants' display of the Program on three televisions, $10 cover charge, additional profits derived from the unlawful exhibition of the Program (*e.g.,* drink sales), and repeat offenses, in addition to the need to deter future violations. *See Googies Luncheonette,* 77 F. Supp. at 491 (awarding enhanced damages of a factor of eight times the base award "to…persuade [the] defendant that it is not only lawful to obtain property only as allowed, but less expensive."). Accordingly, statutory and enhanced damages total $15,400.

Finally, the Court has reviewed the materials submitted in support of the plaintiff's request for $2,694 in attorneys' fees and costs. The Court finds the amount in the affidavit well supported and reasonable given the circumstances. Therefore, the sum of damages and attorneys' fees and costs is $18,094, which the Court, in its discretion and consistent with the statute, adjusts to $18,000.

\* \* \*

For the reasons stated above, the Court enters a final judgment for the plaintiff and against the defendants, jointly and severally, in the amount of $18,000.

Date: October 23, 2012

_____
John J. Tharp, Jr.
United States District Judge